1
2
3                      UNITED STATES DISTRICT COURT
4                            DISTRICT OF NEVADA
5                                    * * *
6   STEVEN M. KINFORD,                    Case No. 3:12-cv-00489-MMD-CLB
7                            Petitioner,              ORDER
8          v.
9   BRIAN E. WILLIAMS, *et al.*,
10                        Respondents.

11  **I.     SUMMARY**

12         Petitioner Steven Kinford filed a second amended petition for writ of *habeas*

13  *corpus*. (ECF No. 84 ("Second Amended Petition").) Before the Court is Respondents'

14  motion to dismiss. (ECF No. 92 ("Motion").) Kinford opposes the Motion. (ECF No. 95.)

15  Respondents filed a reply. (ECF No. 103 ("Reply").) For the reasons discussed below, the

16  Motion is granted in part and denied in part.

17  **II.    BACKGROUND**

18         **A.     Conviction and Direct Appeal**

19         Kinford challenges a conviction and sentence imposed by the Third Judicial District

20  Court for Lyon County ("state court").[1] Pursuant to a guilty plea agreement, Kinford pled

21  guilty to the crime of lewdness with a child under 14 years old. (ECF No. 48-24.) On

22  August 27, 2008, the state court entered a judgment of conviction sentencing him to a life

23  term with a minimum parole eligibility of 10 years, along with lifetime supervision. (ECF

24  No. 48-28.)

25         Kinford filed a direct appeal and appellate attorney Jacob Sommer was appointed.

26  (ECF Nos. 48-30, 48-41.) After discussing potential claims with Sommer, Kinford filed a

27

28         [1]*See State v. Kinford*, Case No. CR6913.

notice of withdrawal of appeal.[2] (ECF No. 48-50.) On August 10, 2009, the Nevada Supreme Court dismissed the appeal. (ECF No. 48-56.)

### B.     First State Post-Conviction Proceedings

On August 6, 2009, Kinford filed a state petition for writ of *habeas corpus* seeking post-conviction relief. (ECF No. 48-55 ("First State Petition").) Kinford also filed a motion for appointment of counsel. (ECF No. 48-54.) Post-conviction attorney Robert Fry was appointed to represent Kinford. (ECF No. 48-58). Following an evidentiary hearing and oral argument, the First State Petition was denied.[3] (ECF Nos. 49-16, 49-23.)

Kinford filed a post-conviction appeal with the help of post-conviction appellate attorney Erik Johnson. (ECF No. 49-31 ("First Post-Conviction Appeal").) Kinford raised three issues on appeal:

1. Is a guilty plea valid when [Kinford] was told by the district judge that if [Kinford] pleads guilty, he is facing 10 years to life but if he refuses, he is "looking at 50 years minimum" and "if [Kinford] didn't make a decision

---

[2]Sommer wrote a note in Kinford's file stating that Sommer was "unable to find any good faith basis upon which to file an appeal." (ECF No. 52-32.) Sommer advised Kinford to dismiss the appeal and pursue post-conviction relief instead, and Kinford agreed. (*Id.*)

[3]The First State Petition and supplements raised a total of seven grounds:

*Ground I*: Ineffective assistance of counsel ("IAC") and lack of due process at the plea-bargaining stage and plea agreement. Trial counsel failed to advise Kinford regarding potential sentence and coerced Kinford into taking a plea deal.

*Ground II*: Lack of due process and IAC for permitting the change of plea and sentencing to take place while Kinford was heavily medicated.

*Ground III*: Lack of due process and IAC by requiring Kinford to plead guilty to an event he cannot remember due to traumatic brain injury.

*Ground IV*: Lack of due process at sentencing and IAC for incorrectly advising Kinford regarding the potential sentence and failing to move to withdraw the guilty plea that was based on erroneous information.

*Ground V*: IAC for failing to perform proper discovery or file any pretrial motions or evidentiary motions regarding exculpatory audio tapes.

*Ground VI*: IAC and lack of due process for failure to use the Nevada statute in effect at the time of the commission of the crime.

*Ground VII*: Under the totality of the circumstances, Kinford's guilty plea was not properly entered and did not comport with due process.

(ECF Nos. 48-55, 48-63, 49-8).

today. [*sic*] [the judge was] going to make one, okay?"

2. Is trial counsel ineffective for agreeing with the guilty plea so obtained?

3. Is appellate [attorney] ineffective for withdrawing the direct appeal?

(*Id.* at 5.) The Nevada Supreme Court affirmed the denial of relief on the first and second issues but declined to address the third issue because it was not raised before the state court. (ECF No. 49-41.) A remittitur issued on November 4, 2011. (ECF No. 49-49.)

## C.   Second State Post-Conviction Proceedings

In December 2011, Kinford filed a second state petition for writ of *habeas corpus*. (ECF No. 49-51 ("Second State Petition").)[4] The State moved for dismissal, and the Second State Petition was dismissed as procedurally barred. (ECF Nos. 49-58, 50.)

Kinford appealed (ECF No. 50-7 ("Second Post-Conviction Appeal")).[5] The Nevada Supreme Court affirmed in December 2012, finding that the Second State Petition was both untimely and successive under NRS § 34.726(1) and NRS § 34.810(2), and thus procedurally barred as Kinford failed to demonstrate good cause and actual

---

[4]The Second State Petition raised four grounds:

*Ground One*: IAC for conspiring with the State to withhold exculpatory evidence that the victim's father was also accused of molesting the victim and audio tapes containing a confession by Kinford's ex-wife that she put the victim up to bringing the charges against Kinford.

*Ground Two*: IAC for conspiring with the State to threaten or coerce Kinford into signing a plea agreement.

*Ground Three*: Lack of due process because prosecutors withheld exculpatory evidence that the victim's father was the molester, proving Kinford's innocence.

*Ground Four*: IAC for allowing the State to secure an unconstitutionally severe sentence for kissing a 12-year-old girl.

(ECF No. 49-51, *see also* ECF No. 25-16 (earlier filed and more legible version of Second State Petition).) Kinford indicated on the form that he had previously filed a petition challenging his conviction and attached a copy of the First State Petition and supplements as "Exhibit 1." (ECF No. 49-51 at 6, 20-56.)

[5]Kinford filed a *pro se* motion for withdrawal of guilty plea in May 2012 while the Second Post-Conviction Appeal was pending, and amended the motion multiple times. (ECF Nos. 50-15, 50-28, 50-33, 53-1.) The state court denied Kinford's request in July 2013. (ECF No. 53-6.) Kinford did not appeal.

1    prejudice. (ECF No. 50-25.)

2        **D.    Federal Habeas Action**

3        On September 7, 2012, Kinford mailed, or handed to a prison official for the

4    purpose of mailing, the *pro se* petition for writ of *habeas corpus* (ECF No. 10 ("Original

5    Petition")) initiating this federal case. Kinford raised two grounds for relief:

6        *Ground One*: Kinford was denied due process of law as guaranteed by the
7        Fifth and Fourteenth Amendments based on entry of an unknowing,
         unintelligent, and involuntary guilty plea.
8
         *Ground Two*: Kinford's decision to enter an *Alford*[6] plea was based upon
9        ineffective assistance of counsel.

10   (*Id.* 12-16.) Respondents moved to dismiss, arguing the Original Petition was

11   unexhausted and procedurally barred. (ECF No. 20.) The Court denied Respondents'

12   motion, construed Kinford's question as a motion for appointment of counsel, appointed

13   the Federal Public Defender, and granted Kinford leave to amend. (ECF No. 40.)

14       Kinford filed a counseled First Amended Petition (ECF No. 47) in September

15   2014.[7] Respondents moved to dismiss claims in the First Amended Petition as untimely,

16   unexhausted, procedurally barred, and/or non-cognizable. (ECF No. 56.) Kinford

17   opposed the dismissal motion and moved for a stay and abeyance. (ECF Nos. 59, 61.)

18   _____

19       [6]*See North Carolina v. Alford*, 400 U.S. 25 (1970).

20       [7]The First Amended Petition alleged four grounds for relief under the Fifth, Sixth,
     and Fourteenth Amendments of the U.S. Constitution:
21
         *Ground One*: Kinford's trial lawyers had undisclosed conflicts of interest that
22       adversely affected their representation of Kinford, in violation of Kinford's
         right to effective assistance of counsel.
23
         *Ground Two*: Kinford's guilty plea was not entered knowingly, intelligently,
         and voluntarily, in violation of his right to due process of law.
24
         *Ground Three*: Kinford's plea, and his inability to withdraw that plea,
25       resulted from the ineffective assistance of his appointed trial counsel, in
         violation of his right to the effective assistance of counsel.
26
         *Ground Four*: Kinford's appellate attorney was ineffective for advising
27       Kinford to abandon his direct appeal, depriving him of the ability to raise
         meritorious claims for relief, in violation of his right to due process the
         effective assistance of counsel.
28
     (ECF No. 47.)

1   The Court granted Kinford's motion, staying this action pending exhaustion of his claims

2   in state court, and denied Respondents' dismissal motion without prejudice. (ECF No.

3   75.)

4           E.      **Third State Post-Conviction Proceedings**

5           On October 9, 2014, Kinford filed a third state petition for writ of *habeas corpus*

6   (ECF No. 85-7 ("Third State Petition")) through federal counsel.[8] The State moved to

7   dismiss, and Kinford opposed the motion. (ECF Nos. 85-10, 85-11.) The state court held

8   the Third State Petition was procedurally barred, but Kinford might be able to show good

9   cause to overcome the procedural bars as to his IAC claim alleging his trial lawyers had

10  undisclosed conflicts of interest adversely affecting their representation of Kinford

11  ("Conflicts IAC Claim"). (ECF No. 85-16.) The court ordered an evidentiary hearing on the

12  Conflicts IAC Claim and dismissed the three other grounds. (*Id.*) Following the April 2017

13  evidentiary hearing, the Conflicts IAC Claim was denied. (ECF Nos. 85-18, 86-4.)

14          Kinford appealed the adverse ruling on the Conflicts IAC Claim. (ECF No. 86-7

15  ("Third Post-Conviction Appeal").) In April 2019, the Nevada Supreme Court affirmed the

16  state court's finding that the Third State Petition was procedurally barred under NRS §

17  34.726(1) and NRS § 34.810(2) and that Kinford did not show good cause to excuse the

18  procedural bars. (ECF No. 86-10.) The Nevada Supreme Court thus concluded that the

19  state court did not err in denying post-conviction relief. (*Id.*)

20          F.      **Reopened Federal Habeas Action**

21          In May 2019, the Court granted Kinford's unopposed request to reopen this case

22  and set a schedule to complete briefing. (ECF Nos. 79-81.) Pursuant to the parties'

23  stipulation, Kinford received leave to further amend his pleading. (ECF No. 83.) Kinford

24  filed the Second Amended Petition (ECF No. 84) in August 2019, alleging four grounds

25  for relief under the Fifth, Sixth, and Fourteenth Amendments:

26          *Claim 1:* Kinford's trial lawyers had undisclosed conflicts of interest that
            adversely affected their representation of Kinford, in violation of his right to

27

28          [8]The Third State Petition alleged virtually identical grounds as the First Amended
    Petition. (*Compare* ECF Nos. 47 *and* 85-7.)

the effective assistance of counsel.

*Claim 2:* Kinford's guilty plea was not entered knowingly, intelligently, and voluntarily, in violation of his right to due process of law.

   A.  Kinford did not understand the consequences of his plea.

   B.  The judge coerced Kinford to enter his plea.

   C.  Kinford's medical issues prevented him from understanding the plea.

*Claim 3:* Kinford's plea, and his inability to withdraw that plea, resulted from the ineffective assistance of his appointed attorneys, in violation of his right to the effective assistance of counsel.

   A.  Kinford's attorneys failed to effectively investigate the case or advise Kinford about his potential defense.

   B.  Kinford's lawyer grossly misadvised him about the consequences of his plea and a potential trial.

   C.  Kinford's attorney failed to object to or remedy the judge's coercion prior to the plea.

   D.  Kinford's attorney failed to ensure that his client entered a voluntary plea given the health issues that he knew about, or should have known about.

   E.  Kinford's attorneys deprived his client of the opportunity to seek withdrawal of his plea before sentencing.

*Claim 4:* Kinford's appellate attorney was ineffective for advising Kinford to abandon his direct appeal, depriving him of the ability to raise meritorious claims for relief, in violation of his right to due process the effective assistance of counsel.

(*Id.* at 15-58.) Kinford raised virtually identical grounds for relief in the First Amended Petition (ECF No. 47), Third State Petition (ECF No. 85-7), and Second Amended Petition (ECF No. 84), but each pleading provides different exhaustion information. The Second Amended Petition provides extensive additional allegations based on the April 2017 evidentiary hearing before the state court as well as other information uncovered by the Federal Public Defender.

     Respondents' Motion repeats their previous request for dismissal of certain claims in the Second Amended Petition as untimely, non-cognizable, unexhausted, and procedurally defaulted. (ECF No. 92.)

## III.   TIMELINESS

     Respondents argue that Claims 1, 2(A), 3(A), 3(B), 3(E), and 4 are untimely. The Court will address Claims 1 and 3(A) in relation to procedural default. *See Cooper v.*

*Neven*, 641 F.3d 322, 327-28 (9th Cir. 2011) (stating that when a particular issue is dispositive, a district court "need not consider alternative reasons for dismissing the petition.").

### A.   Governing Law

The Antiterrorism and Effective Death Penalty Act (AEDPA) establishes a one-year statute of limitations for incarcerated individuals to file a federal habeas petition. *See* 28 U.S.C. § 2244(d)(1)(A). The AEDPA limitations period is tolled while a "properly filed application" for post-conviction relief is pending before a state court. *Id.* § 2244(d)(2). But a pending federal habeas petition does not statutorily toll the AEDPA deadline. *See Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (internal quotes omitted) (holding that "an application for federal habeas corpus review is not an application for State post-conviction or other collateral review . . . therefore [does] not toll the limitation period").

The parties agree that Kinford's Original Petition was timely but his Second Amended Petition was not. Thus, Kinford's new claims must relate back to his Original Petition to be deemed timely.

In habeas proceedings, when a petitioner alleges a new claim in an amended petition filed after the expiration of the AEDPA deadline, the new claim will be considered timely only if it relates back to a claim in a timely-filed petition. *See Mayle v. Felix*, 545 U.S. 644 (2005). Although Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim'" in ordinary civil cases, Rule 2 of the Rules Governing Section 2254 Cases "requires a more detailed statement" in habeas cases as it "instructs the petitioner to 'specify all the grounds for relief available to [him]' and to 'state the facts supporting each ground.'"[9] *Id.* at 649 (alteration in original) (citing Fed. R. Civ. P. 8(a); Habeas R. 2(c)). Congress has authorized amendments to habeas petitions as provided in the Civil Rules. *Id.* (citing 28 U.S.C. § 2242). Under Civil Rule 15, an

---

[9]The use of "Civil Rule" or "Civil Rules" in this order points to the Federal Rules of Civil Procedure while a "Habeas Rule" refers to the Rules Governing Section 2254 Cases in the United States District Courts.

7

1  untimely amendment properly "relates back to the date of the original pleading" as long

2  as it arises out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c).

3  For habeas petitions, "relation back depends on the existence of a common core of

4  operative facts uniting the original and newly asserted claims." *Mayle,* 545 U.S. at 659

5  (internal quotes omitted). New claims in an amended habeas petition do not arise out of

6  "the same conduct, transaction or occurrence" as prior claims merely because they

7  challenge the same trial, conviction, or sentence. *Id.* at 652. Rather, to properly relate

8  back, a new claim must arise from the same collection of facts alleged in the earlier

9  petition. *Id.* An amended petition "does not relate back (and thereby escape AEDPA's

10  one-year time limit) when it asserts a new ground for relief supported by facts that differ

11  in both time and type" from those alleged in the timely petition. *Id.* at 650.[10]

12  **B.      Claims 2(A) and 3(B)**

13  Claim 2(A) alleges that Kinford did not enter the guilty plea knowingly, intelligently,

14  and voluntarily because his attorney falsely advised that he could receive a sentence of

15  10-25 years, instead of a mandatory life sentence with the possibility of parole after 10

16  years. (ECF No. 84 at 48-49.) In Claim 3(B), Kinford brings an IAC claim based on the

17  same facts as Claim 2(A). (*Id.* at 56.)

18  Respondents argue Claims 2(A) and 3(B) do not relate back because the Original

19  Petition did not allege that trial counsel misrepresented or misstated the possible

20  sentence rendering the plea invalid, and thus these claims arise from a new and different

21  core of operative facts. (ECF No. 92 at 9.) Kinford points out that Claims 2(A) and 3(B)

22  allege the same legal theories as the Original Petition—due process and IAC claims—

23  and only provide more specific facts to show why Kinford did not understand the plea and

24  why the attorney failed Kinford. (ECF No. 95 at 11-12.) The Court agrees. The Original

25  Petition specifically alleged that Kinford's plea was involuntary because he "did not desire

26

27  _____

28  [10] *See also Schneider v. McDaniel*, 674 F.3d 1144, 1151 (9th Cir. 2012) (holding
that one shared fact in two divergent legal theories was "not sufficient to conclude that
they arise out of a common *core* of operative facts.").

to enter a guilty plea to an offense that resulted in a mandatory life sentence" (ECF No. 10 at 12), and Kinford's decision to enter an *Alford* plea was based on "erroneous advice" and "ineffective assistance of counsel." (*Id.* at 12, 15.) Implicit within Kinford's *pro se* claim is the allegation that his attorney misrepresented or misstated the potential sentence, rendering Kinford's guilty plea invalid. Claims 2(A) and 3(B) relate back to the Original Petition and are thus timely.

### C.    Claim 3(E)

Claim 3(E) brings an IAC claim asserting Kinford's trial counsel purportedly deprived Kinford of the opportunity to seek withdrawal of his plea before sentencing. (ECF No. 84 at 58-59.) Kinford alleges that trial counsel could have remedied the judge's coercion by litigating a motion to withdraw the plea, but they failed to do so because they had conflicts of interest and mishandled the case. (*Id.*) Kinford specifies that Claim 3(E) is based on Claim 2(B),[11] which alleges that the judge coerced Kinford into pleading guilty. (*Id.* at 49-52.)

Respondents argue Claim 3(E) does not relate back because the Original Petition did not allege mishandling of the case or a conflict of interest that required an independent attorney. (ECF No. 92 at 9-10.) Kinford counters that Claim 3(E)'s allegations do not differ in time and type since his attempt to withdraw the plea and secure a new attorney were included in the Original Petition. (ECF No. 95 at 13 (citing ECF No. 10 at 10-12).)

Applying the liberal construction accorded to *pro se* filings under the governing law to the fullest possible extent, the Court is persuaded that Claim 3(E) relates back to the Original Petition. The IAC claim in Claim 3(E) and the due process claim in Ground One of the Original Petition are tied to the same core of operative facts—Kinford was allegedly coerced into pleading guilty by the judge and Kinford's own trial counsel, and later sought to withdraw the plea and appoint a new attorney, but counsel did not advance Kinford's *pro se* motion to remedy the coercion prior to sentencing. (ECF No. 10 at 10-12.) The IAC claim in Claim 3(E) presents a different legal theory tied to this same core of operative

---

[11]Respondents do not challenge the timeliness of Ground 2(B).

facts. Accordingly, Claim 3(E) is timely.

### D.   Claim 4

Claim 4 raises an IAC claim based on the appellate attorney's advice to Kinford to abandon the direct appeal. (ECF No. 84 at 60-62.) Claim 4 points to evidence in the record that Kinford's plea was invalid; specifically, that he was misadvised as to the potential sentence, the judge improperly coerced him, and Kinford's medical issues interfered with his ability to enter a voluntary plea. (*Id.* (referencing Claims 2(A), 2(B), and 2(C)).) These allegations are tied to a common core of operative facts as Ground One of the Original Petition, which alleged a due process claim based on his medical issues and judicial coercion. *See, e.g., Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013) (permitting relation back based on a common core of facts). Claim 4 is therefore timely.

## IV.   COGNIZABILITY

Respondents move to dismiss Claims 1 (in part) and 3(A) arguing that such claims are not cognizable in federal habeas under *Tollett v. Henderson*, 411 U.S. 258 (1973), because the claims allege pre-plea errors. (ECF No. 92 at 16-17.)

In *Tollett*, the Supreme Court held, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." 411 U.S. at 267. Thus, "[a]s a general rule, one who voluntarily and intelligently pleads guilty to a criminal charge may not subsequently seek federal habeas relief on the basis of pre-plea constitutional violations." *Hudson v. Moran*, 760 F.2d 1027, 1029-30 (9th Cir. 1985).

However, *Tollett* does not bar all post-conviction claims alleging pre-plea violations. A criminal defendant who pled guilty (or no contest) may "attack the voluntary and intelligent character of the guilty plea." *Tollett*, 411 U.S. at 267. This is done by showing that the advice defendant received from counsel was not within the range of competence demanded of attorneys in criminal cases. *See McMann v. Richardson*, 397 U.S. 759, 770-71 (1970). "*Tollett* . . . provides that although freestanding constitutional

claims are unavailable to habeas petitioners who plead guilty, claims of pre-plea ineffective assistance of counsel are cognizable on federal habeas review when the action, or inaction, of counsel prevents petitioner from making an informed choice whether to plead." *Mahrt v. Beard*, 849 F.3d 1164, 1170-71 (9th Cir. 2017) (rejecting state's argument that *Tollett* barred IAC claim for failure to file suppression motion because such motion did not involve advice concerning the guilty plea itself).

   *Tollett* is inapplicable here as both Claims 1 (in part) and 3(A) attack the voluntary and intelligent character of Kinford's guilty plea by alleging that counsel's ineffective assistance prevented Kinford from making an informed choice of whether to plead guilty. Claim 1 alleges all three of Kinford's trial counsel previously represented the victim's father, who was also accused of molesting the victim. (ECF No. 84 at 19-47.) Kinford alleges that counsel's failure to disclose their conflict of interest adversely affected their representation of Kinford because, among other things, counsel ignored Kinford's *pro se* motion to withdraw the guilty plea. (*Id.*) Additionally, Claim 3(A) contends that counsel's undisclosed conflicts also prevented them from effectively investigating the case or advising Kinford about a potential defense. (*Id.* at 54-56.) These claims sufficiently allege counsel's actions or inaction prevented Kinford from making an informed decision on whether to plead. Thus, Claims 1 (in part) and 3(A) are cognizable. *See Tollet*, 411 U.S. at 267-69; *Mahrt*, 849 F.3d at 1170-71.

## V.   EXHAUSTION

### A.   Governing Law

   Pursuant to 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust state court remedies on a claim before presenting that claim to the federal courts. *See* 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement ensures that state courts, as a matter of comity, will have the first opportunity to address and correct alleged violations of federal constitutional guarantees. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "A petitioner has exhausted his [or her] federal claims when he [or she] has fully and fairly presented them to the state courts." *Woods v. Sinclair*, 764 F.3d 1109, 1129

(9th Cir. 2014) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) (emphasis in original) ("Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims.")). To satisfy the exhaustion requirement, a claim must have been raised through one complete round of either direct appeal or collateral proceedings to the highest state court level of review available. *See O'Sullivan*, 526 U.S. at 844-45; *Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003) (en banc). A properly exhausted claim "'must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief'." *Woods*, 764 F.3d at 1129 (quoting *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996)). Fair presentation therefore requires a petitioner to present the state courts with both the operative facts and the federal legal theory upon which the claim is based. *See Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2004).

## B.    Claim 2(A)

Claim 2(A) alleges that Kinford's guilty plea was invalid because trial counsel falsely advised that Kinford could receive a sentence of 10-25 years, instead of a mandatory life sentence with the possibility of parole after 10 years. (ECF No. 84 at 48-49.) Respondents counter that this claim is unexhausted because Kinford's appellate briefs in the First and Third Post-Conviction Appeals did not allege counsel misadvised Kinford that he would receive a sentence of 10-25 years. (ECF No. 92 at 11-12 (citing ECF Nos. 49-31, 86-7).) Kinford contends that Claim 2(A) is similar to Ground One of the Original Petition concerning the validity of his plea, which this Court found exhausted. (ECF No. 95 at 22-23 (citing ECF No. 40 at 4-5).) Kinford asserts that Claim 2(A) is simply more precise than the basic factual allegation of Ground One, *i.e.*, Kinford did not understand that his plea carried a mandatory sentence of 10-years to life. (*Id.*)

Kinford misreads the prior exhaustion ruling. The Court held as follows:

In the opening brief on appeal, petitioner's [federal] counsel argued that the state district court improperly intervened in the plea negotiation process and coerced petitioner to accept the State's plea offer by advising petitioner of the benefits of the plea agreement, the risk of going to trial, and the severe consequences of a conviction. [ECF No. 49-31 at 13.] Implicit within this

> argument is the more basic argument, which petitioner voices in his federal
> habeas petition, that he did not want to plead guilty to a crime carrying a
> mandatory life sentence and that the state district judge improperly advised
> him. Therefore, petitioner's inclusion of these statements within Ground
> [One] does not render the claim unexhausted.

(ECF No. 40 at 5.) Nothing in the Court's ruling addressed the central allegation of Claim 2A, which is that Kinford's guilty plea was invalid because trial counsel rendered false advice. That allegation was not presented to the Nevada Supreme Court, although Kinford could have raised it.[12] In relevant part, Kinford's appellate brief in the First Post-Conviction Appeal alleged that (i) the judge improperly advised Kinford and coerced Kinford into taking the plea,[13] and (ii) trial counsel was ineffective for allowing and encouraging the entry of a coerced guilty plea. (ECF No. 49-31.) Additionally, Kinford's appellate brief in the Third Post-Conviction Appeal only addressed the Conflict IAC Claim. (ECF No. 86-7.) Because the operative facts and legal theory of Claim 2(A) were never presented to the Nevada Supreme Court, the claim is unexhausted. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (stating that a petitioner "must fairly present his [or her] claim in each appropriate state court," including a state supreme court).

## C.    Claim 4

Claim 4 alleges that Kinford's appellate attorney was ineffective for advising Kinford to abandon his direct appeal, thus depriving Kinford of the ability to raise meritorious claims (*i.e.*, Claims 2(A), 2(B), and 2(C) regarding the validity of his guilty plea). (ECF No. 84 at 60-62.) Respondents argue that, although Kinford raised an

[12]Ground IV of the First State Petition presented an IAC claim based on trial counsel's failure to advise Kinford with correct information regarding the potential sentence or move to withdraw the guilty plea, which was based on trial counsel's erroneous information. (ECF No. 48-55 at 14.) However, Kinford did not raise this claim in the First Post-Conviction Appeal. (*See* ECF No. 49-31.)

[13]This is referred to as a "*Cripps* violation" under Nevada case law. *See Cripps v. State*, 122 Nev. 764, 770-71 (2006) (adopting a bright-line prohibition against any judicial participation in plea negotiations with "one narrow, limited exception: the judge may indicate on the record whether the judge is inclined to follow a particular sentencing recommendation of the parties. Any other comments or discussion by the judge relating to a potential plea must be strictly avoided.")

1    appellate-level IAC claim in the First Post-Conviction Appeal, the allegations were limited
2    to appellate attorney's failure to raise the purported *Cripps* violation, Claim 2(B)—not
3    Claims 2(A) or 2(C). (ECF No. 92 at 12-13.) Kinford counters that his appellate brief set
4    forth allegations beyond the *Cripps* violation, such as his brain injury and medication,
5    attempts to withdraw his plea before sentencing, and misunderstanding of the sentence
6    (ECF No. 95 at 23 (citing ECF No. 49-31 at 3-6, 8, 10-11).) Because the brief recounted
7    facts beyond the *Cripps* violation, Kinford argues the gravamen of Claim 4 was fairly
8    presented to the state courts. (*Id.*)

9           The Court finds Claim 4 is unexhausted. "Generally, a petitioner satisfies the
10   exhaustion requirement if he [or she] properly pursues a claim (1) throughout the entire
11   direct appellate process of the state, *or* (2) *throughout one entire judicial postconviction*
12   *process* available in the state." *Casey v. Moore*, 386 F.3d 896, 916 (9th Cir. 2004)
13   (emphasis added and omitted) (quoting Liebman & Hertz, *Federal Habeas Corpus*
14   *Practice and Procedure*, § 23.3b (4th ed. 1998)). Here, the Nevada Supreme Court
15   expressly declined to address Kinford's appellate IAC claim because he failed to raise it
16   before the state court: "Kinford argues that appellate counsel was ineffective for failing to
17   recognize appealable issues and therefore incorrectly advising him that he had no basis
18   to lodge a direct appeal. *As this claim was not raised in his petition below, we decline to*
19   *address it on appeal.*" (ECF No. 49-41 at 5 (emphasis added).) Because Kinford raised
20   an appellate IAC claim for the first and only time in the First Post-Conviction Appeal,
21   Kinford did not fairly present such claim throughout one entire round of post-conviction
22   process in Nevada courts, so as to exhaust state remedies for purposes of federal habeas
23   review. As such, Claim 4 is unexhausted in its entirety.

24          **D.     Claims 2, 3, and 4**

25          Claims 2, 3, and 4 each state, "Kinford hereby incorporates all prior claims in the
26   petition." (ECF No. 84 at 47, 54, 60.) Respondents' Motion argues in passing that
27   Kinford's "incorporation of unexhausted grounds render Claims 2, 3 and 4 unexhausted."
28   (ECF No. 92 at 13.) Kinford opposes this conclusion. (ECF No. 95 at 24.) Respondents'

1  Reply does not reassert the incorporation argument. (ECF No. 103 at 10-14.) As

2  previously noted, Respondents' Motion does not specifically challenge Claims 2(B), 2(C),

3  or 3(C), and the Court has now determined that Claims 2(A) and 4 are unexhausted for

4  reasons other than incorporation of prior claims. Respondents provide no legal authority

5  to support this particular argument. The Court finds that Kinford's incorporation of all prior

6  claims, in and of itself, did not render Claims 2, 3, and 4 unexhausted.

7  **VI.  PROCEDURAL BARS**

8  Respondents assert that Claims 1, 2(A), 3(A), 3(B), 3(D), and 3(E) are procedurally

9  barred. (ECF No. 92 at 14-16.) In addition, Respondents ask the Court to apply Nevada's

10  procedural bars to any claim found unexhausted. (*Id.* at 14.) Because the Court has now

11  determined Claim 4 is unexhausted, Claim 4 is included in the procedural bar analysis.

12  **A.  Governing Law**

13  Where the state courts deny a habeas claim on independent and adequate state

14  law grounds, that claim is "procedurally defaulted" for purposes of federal habeas review.

15  *Edwards v. Carpenter*, 529 U.S. 446, 454-55 (2000). Nevada's one-year statute of

16  limitation for post-conviction petitions, NRS 34.726, and prohibition on second or

17  successive post-conviction petitions, NRS 34.810(2), are independent and adequate

18  state procedural rules as applied to non-capital cases. *See*, *e.g.*, *Williams v. Filson*, 908

19  F.3d 546, 580 (9th Cir. 2018); *Bargas v. Burns*, 179 F.3d 1207, 1211-14 (9th Cir. 1999).

20  Additionally, a federal court may consider a claim procedurally defaulted where "it is clear

21  that the state court would hold the claim procedurally barred." *Sandgathe v. Maass*, 314

22  F.3d 371, 376 (9th Cir. 2002) (quoting *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir.

23  2002)). When a claim is procedurally defaulted, federal review is barred unless the

24  petitioner "can demonstrate cause for the default and actual prejudice as a result of the

25  alleged violation of federal law." *Coleman*, 501 U.S. at 724.

26  **B.  Claims 1 and 3(A)**

27  Claim 1 alleges an IAC claim based on trial counsel's undisclosed conflicts of

28  interest, which adversely affected counsel's representation of Kinford. (ECF No. 84 at 19-

47.) Claim 3(A) raises an IAC claim for counsel's failure to effectively investigate the case or advise Kinford about his potential defense. (*Id.* at 54-56.) The statement of exhaustion for the Second Amended Petition states that "Kinford exhausted Claims 1 and 3(A) on his return to state court."[14] (*Id.* at 18.) These claims were presented to the state court for the first time in the Third State Petition. (ECF No. 85-7 at 10-21, 26-27). The claims were then dismissed and affirmed as procedurally barred. (ECF No. 86-10.) Thus, Claims 1 and 3(A) were procedurally defaulted in Nevada's courts on independent and adequate state law grounds.

### C.   Claims 2(A) and 4

Claims 2(A) and 4 are unexhausted. A federal court need not dismiss a claim on exhaustion grounds if it is clear the state court would find the claim procedurally barred under state law. *See Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc) ("An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court."). Here, the state court would—and *did* in fact—find Claims 2(A) and 4 procedurally barred under Nevada law when Kinford presented the claims to the state court as grounds 2(A) and 4 of the Third State Petition. (ECF No. 85-7 at 21-22, 30-31.) The state court dismissed grounds 2(A) and 4 as procedurally barred under NRS § 34.726, NRS § 34.745(4), and NRS § 34.810. (ECF No. 85-16.) Kinford did not appeal the state court's ruling as to grounds 2(A) and 4 of the Third State Petition. The Court therefore finds that Claims 2(A) and 4 are now procedurally defaulted.

### D.   Claims 3(B), 3(D), and 3(E)

Claim 3 presents IAC allegations based on Kinford's plea and inability to withdraw his plea. (ECF No. 84 at 54-59.) Claim 3(B) alleges that trial counsel grossly misadvised Kinford about the consequences of his plea and a potential trial. (*Id.* at 56). Claim 3(D)

---

[14]The First Amended Petition stated, "Grounds One and Ground 3(A) are not exhausted, as they is [*sic*] based on new information concerning conflicts of interest by Kinford's attorneys that were not previously revealed, and that were discovered for the first time during appointed federal counsel's investigation." (ECF No. 47 at 10.)

1   alleges trial counsel failed to ensure that Kinford entered a voluntary plea given the health

2   issues counsel knew about or should have known about. (*Id.* at 57-58.)[15] Claim 3(E)

3   alleges that trial counsel deprived Kinford of the opportunity to seek withdrawal of his plea

4   before sentencing. (*Id.* at 58-59.) Kinford alleges that these three IAC claims are similar

5   to Ground Two of the Original Petition, which the Court has already found to be

6   exhausted. (*Id.* at 19 (citing ECF No. 40 at 6).)

7         Respondents assert that Claims 3(B), 3(D), and 3(E) are procedurally defaulted

8   because Kinford presented the claims in the Second and Third State Petitions, and both

9   state petitions were dismissed in Nevada's courts on independent and adequate state

10  law grounds. (ECF No. 92 at 15-16.)

11              **1.    Claim 3(B)**

12        Kinford argues that Claim 3(B) is not defaulted because it was presented to the

13  Nevada Supreme Court in the First Post-Conviction Appeal. (ECF No. 95 at 27.) In

14  particular, Kinford contends that Claims 3(B) and 2(A) are based on essentially the same

15  facts—*i.e.*, Kinford did not understand the consequences of his plea because his attorney

16  misadvised him—and both claims were presented in the First Post-Conviction Appeal.

17  However, Kinford is incorrect. As previously addressed, Claim 2(A) is both unexhausted

18  and now procedurally defaulted because it was not presented to the Nevada Supreme

19  Court in the First Post-Conviction Appeal. The same is true of Claim 3(B) as it is based

20  on essentially the same facts, and thus Claim 3(B) is unexhausted and procedurally

21  defaulted.

22              **2.    Claim 3(D)**

23        Kinford also contends that Claim 3(D) is not defaulted because a trial-level IAC

24  claim was fairly presented in the First Post-Conviction Appeal with a thorough description

25  of his health issues. (*Id.* at 28.) The Court agrees. Although Kinford's appellate brief

26

27            [15]Claim 3(D) incorporates the allegations set forth in Claim 2(C). (ECF No. 84 at
28  57.) The Motion does not specifically challenge Claim 2(C), which alleges that Kinford's
    medical issues prevented him from understanding the plea.

17

1   discussed the purported *Cripps* violation, it also provided significant details regarding

2   Kinford's traumatic brain injury, memory problems, heavy medications, multiple and

3   conflicting competency evaluations, diagnoses of multiple mental illnesses, request to

4   withdraw the plea before sentencing, and counsel's acknowledgment of Kinford's "organic

5   brain condition." (ECF No. 49-31 at 6-9, 11.) Kinford cited the controlling United States

6   Supreme Court authority for evaluating defense counsel's performance in the plea-

7   bargaining context (*Id.* at 15 (citing *Hill v. Lockhart*, 474 U.S 52 (1985)), and Kinford's

8   central IAC allegation—trial counsel allowing and encouraging the entry of a coerced

9   guilty plea—was broad enough to encompass his health issues. (*Id.* at 16.) As such, the

10  Nevada Supreme Court was afforded a sufficient opportunity to hear Kinford's contention

11  that his trial counsel failed to ensure that he entered a voluntary plea given his health

12  issues. The Court therefore concludes that Claim 3(D) was fairly presented to the Nevada

13  courts and is not procedurally defaulted.

14          **3.      Claim 3(E)**

15          Finally, Respondents assert that Claim 3(E) is defaulted because the appellate

16  brief in the First Post-Conviction Appeal did not allege that Kinford's trial counsel failed to

17  seek withdrawal of the guilty plea. (ECF No. 92 at 15-16.) Relying on the Court's prior

18  exhaustion ruling (ECF No. 40), Kinford contends that Claim 3(E) was presented because

19  Ground Two of the Original Petition alleged that Kinford's guilty plea resulted from

20  counsel's ineffectiveness "during the entire plea process." (ECF No. 95 at 28-29 (citing

21  ECF No. 10 at 15).)[16]

22          The record reveals that Claim 3(E) is in fact defaulted. Ground IV of the First State

23  Petition presented an IAC claim based on counsel's failure to advise Kinford with correct

24  information regarding the potential sentence or move to withdraw the guilty plea, which

25

26          [16]Kinford also asserts that because the Motion does not specifically argue Claim
    3(E) is unexhausted, the argument is waived. (ECF No. 95 at 28 n.87.) Kinford is correct
27  that Respondents did not include Claim 3(E) in the section of their Motion addressing
    exhaustion alone. (ECF No. 92 at 10-13.) However, Respondents addressed the
28  exhaustion of Claim 3(E) as part of their procedural bar argument. (*Id.* at 15-16.)

was based on counsel's erroneous information. (ECF No. 48-55 at 14.) However, Kinford abandoned Ground IV of the First State Petition in the First Post-Conviction Appeal. (*See* ECF No. 49-31.) Because Ground IV was abandoned on appeal, the operative facts and legal theory of Claim 3(E) were not raised before the Nevada Supreme Court, and Claim 3(E) is now unexhausted and defaulted. *See Baldwin*, 541 U.S. at 29.

In sum, the Court finds that Claims 1, 2(A), 3(A), 3(B), 3(E), and 4 are procedurally defaulted. Thus, federal review is barred unless Kinford can demonstrate cause and prejudice to overcome the default. However, Claim 3(D) is not defaulted and Respondents will be instructed to answer this claim on its merits.

## VII.   CAUSE AND PREJUDICE TO OVERCOME THE DEFAULTS

When an incarcerated individual "procedurally defaults" a federal claim, judicial review is barred unless he or she can show either: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 724. To demonstrate cause, a petitioner must show that some external and objective factor impeded his or her efforts to comply with the state's procedural rule. *See Maples v. Thomas*, 565 U.S. 266, 280-81 (2012). Ignorance or inadvertence does not constitute cause. *See Murray v. Carrier*, 477 U.S. 478, 486-87 (1986). To show prejudice, a petitioner bears the burden of showing not merely that the error created a possibility of prejudice, but that the error worked to his or her actual and substantial disadvantage, infecting the entire proceeding with constitutional error. *Id.* at 494; *Bradford v. Davis*, 923 F.3d 599, 613 (9th Cir. 2019).

Kinford argues he can show cause and prejudice to overcome any default based on the ineffective assistance of his appellate and post-conviction counsel.

### A.   IAC of Appellate Counsel – Claim 2(A)

In certain circumstances, counsel's ineffectiveness in failing properly to preserve a habeas claim for review in state court will suffice to show cause. *See Edwards*, 529 U.S. at 451 (citing *Murray*, 477 U.S. at 488-89). The ineffective assistance of appellate

1   counsel in failing to raise a claim on direct appeal in the state criminal proceedings may

2   potentially establish cause and prejudice. *See Cockett v. Ray*, 333 F.3d 938, 943-44 (9th

3   Cir. 2003). "But to assert such an excuse in a federal habeas petition, a state prisoner

4   must first exhaust in state court the claim that his [or her] appellate counsel was

5   constitutionally inadequate." *Arrendondo v. Neven*, 763 F.3d 1122, 1140 (9th Cir. 2014).

6       Here, Kinford seeks to excuse the procedural default of Claim 2(A) based on

7   alleged constitutional violations by appellate counsel, Jacob Sommer. (ECF No. 95 at 29-

8   30.) However, Kinford failed to present the corresponding appellate IAC claim—Claim 4—

9   to the state court in his First State Petition, and that claim is itself unexhausted and

10   procedurally defaulted. As such, Kinford may not successfully rely upon Claim 4 to

11   establish cause excusing the procedural default of Claim 2(A).

12       **B.    IAC of Post-Conviction Counsel**

13       "Generally, post-conviction counsel's ineffectiveness does not qualify as cause to

14   excuse a procedural default." *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019) (citing

15   *Coleman*, 501 U.S. at 754-55). However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the

16   United States Supreme Court created a narrow exception to the general rule that errors

17   of post-conviction counsel cannot provide cause for a procedural default. *Id.* at 16-17.

18   "Under *Martinez*, the procedural default of a substantial claim of ineffective assistance of

19   trial counsel is excused if state law requires that all claims be brought in the initial

20   collateral review proceeding . . . and if in that proceeding there was no counsel or counsel

21   was ineffective."[17] *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17). But the

22   *Martinez* exception cannot excuse procedural defaults for substantive claims of trial-court

23

24           [17]The parties do not dispute that (i) a Nevada post-conviction petition in a state
25   district court is an initial-review collateral proceeding for purposes of *Martinez*, and (ii)
     Nevada law requires an incarcerated individual to present a trial-level IAC claim in his or
26   her first post-conviction petition for purposes of applying the *Martinez* rule. With these
     prerequisites satisfied, the Court proceeds to *Martinez*'s additional requirements. *See,*
27   *e.g.*, *Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019) (discussing procedural
     default and *Martinez*'s requirements, as applied in the Nevada context).
28

1  error, appellate-level IAC claims, or "attorney errors in other kinds of proceedings,

2  including appeals from initial-review collateral proceedings, second or successive

3  collateral proceedings, and petitions for discretionary review in a State's appellate courts."

4  *Martinez*, 566 U.S. at 16-7; *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

5      To establish cause and prejudice for a trial-level IAC claim under *Martinez*, a

6  petitioner must show that:

> (1) post-conviction counsel performed deficiently; (2) there was a
> reasonable probability that, absent the deficient performance, the result of
> the post-conviction proceedings would have been different, and (3) the
> underlying ineffective-assistance-of-trial-counsel claim is a substantial one,
> which is to say that the prisoner must demonstrate that the claim has some
> merit.

7

8

9

10

11  *Ramirez*, 937 F.3d at 1242 (internal quotations omitted). The *Martinez* test relies on

12  *Strickland v. Washington*, 466 U.S. 668 (1984),[18] for its first and second "cause" prongs.

13  *Id.* at 1241. Notably, a federal district court's determination of the second prong—whether

14  there was a reasonable probability that the result of the post-conviction proceedings

15  would be different—"is necessarily connected to the strength of the argument that trial

16  counsel's assistance was ineffective." *Id.* (quoting *Clabourne v. Ryan*, 745 F.3d 362, 377

17  (9th Cir. 2014) ("The prejudice at issue is prejudice at the post-conviction relief level, but

18  if the claim of ineffective assistance of trial counsel is implausible, then there could not be

19  a reasonable probability that the result of post-conviction proceedings would have been

20  different."), *overruled on other grounds by McKinney v. Ryan*, 813 F.3d 798, 819 (9th Cir.

21

22      [18]The two-element *Strickland* test for IAC claims requires a petitioner to show that
23  (1) "counsel's representation fell below an objective standard of reasonableness," and
   (2) "any such deficiency was 'prejudicial to the defense'." *Garza v. Idaho*, 139 S. Ct. 738,
24  743-44 (2019) (quoting *Strickland*, 466 U.S. at 687–88, 692). The court must apply a
   "strong presumption that counsel's conduct falls within the wide range of reasonable
25  professional assistance." *Strickland*, 466 U.S. at 687-688, 692. The petitioner bears the
   burden of showing that "counsel made errors so serious that counsel was not functioning
26  as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To
   establish prejudice, counsel's errors must be "so serious as to deprive the defendant of a
27  fair trial, a trial whose result is reliable." *Id.* It is not enough for the petitioner "to show that
   the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.
28

1    2015) (en banc)). The third "prejudice" prong directs courts to assess the merits of the

2    underlying trial-level IAC claim. *Ramirez*, 937 F.3d at 1241. A procedural default will not

3    be excused if the underlying IAC claim "is insubstantial," *i.e.*, it lacks merit or is "wholly

4    without factual support." *Id.* (quoting *Martinez*, 566 U.S. at 14-16).

5    　　Kinford advances *Martinez* as the basis for excusing the default of Claims 1, 3(A),

6    3(B), and 3(E),[19] and maintains that Kinford is prejudiced by the defaults. (ECF No. 95 at

7    30-34.) Respondents request that their *Martinez* analysis be deferred to the answer. (ECF

8    No. 103 at 19.) Respondents provided no substantive response to Kinford's cause-and-

9    prejudice arguments.

10    　　　　　　　**4.    Claims 1 and 3(A)**

11    　　Claims 1 and 3(A) allege that trial counsel's conflicts adversely affected their

12    representation of Kinford, including by failing to effectively investigate the case or advise

13    Kinford about his potential defense. (ECF No. 84 at 19–47, 55–56.) Kinford's opposition

14    alleges that post-conviction counsel Robert Fry's failure to investigate and uncover the

15    conflicts was also ineffective since the factual basis for these claims was apparent in the

16    state court's docket. (ECF No. 95 at 32-34.) Federal counsel discovered the conflicts

17    upon obtaining the docket sheet in July 2014 and, within months, filed the First Amended

18    Petition and Third State Petition alleging Claims 1 and 3(A) for the first time.

19    　　The Court finds that the cause-and-prejudice analysis of Claims 1 and 3(A) is

20    necessarily connected to the merits of the claims themselves and will defer a

21    determination on both questions until a merits determination. The Motion is therefore

22    denied without prejudice as to those grounds. Respondents may renew their procedural

23    default arguments in the answer.

24    　　　　　　　**5.    Claims 3(B) and 3(E)**

25    　　Kinford asserts that he can satisfy the *Martinez* test for Claim 3(B) (misadvice

26

27    　　　　　　　[19]Kinford also asks the Court to apply *Martinez* to excuse the default of Claim 2(A);
28    however, *Davila* squarely precludes application of the narrow *Martinez* exception to
     appellate-level IAC claims. *See Davila*, 137 S. Ct. at 2064.

about plea consequences) and Claim 3(E) (failing to move for plea withdrawal before sentencing) based on Fry's failure to present any witnesses or evidence at the June 2010 evidentiary hearing for the First State Petition. Fry's failure to do so, Kinford contends, could not have been justified by any tactical or strategic reason. (ECF No. 95 at 32-33.) As to Claim 3(E), Kinford argues that Fry "could have presented a more precise claim in support of the motion to withdraw" the guilty plea and pointed out "the more liberal standard that would have applied to a pre-sentencing motion." (*Id.* at 33.)

The *Martinez* exception does not apply to Claims 3(B) and 3(E). As explained in Section V.D., *supra*, Claims 3(B) and 3(E) are unexhausted, and now procedurally defaulted, because they were presented in the First State Petition but not presented in the First Post-Conviction Appeal. The omission caused the lack of exhaustion and resulting default. However, Fry no longer represented Kinford on appeal—post-conviction appellate attorney Erik Johnson represented Kinder in the First Post-Conviction Appeal. (*See* ECF No. 49-31.) Thus, Fry did not prevent Kinford from raising these claims on appeal. Accordingly, Fry's performance with regard to the First State Petition—ineffective or not—did not deprive Kinford of the opportunity to raise claims on appeal. The errors of post-conviction appellate counsel are outside the scope of the *Martinez* exception. *See Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings"). Because *Martinez* cannot supply cause for the procedural default of Claims 3(B) and 3(E), these claims must be dismissed as procedurally defaulted.

**VIII.   CONCLUSION**

In accordance with the foregoing, it is therefore ordered that Respondents' Motion to Dismiss (ECF No. 92) is granted in part as follows:

A. Claims 1, 2(A), 3(A) 3(B), 3(E), and 4 are procedurally defaulted.

B. Consideration of whether Kinford can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1, to overcome the procedural default of Claims 1 and 3(A) is deferred until the time of merits review.

C.  Claims 2(A), 3(B), 3(E), and 4 are dismissed with prejudice.

It is further ordered that Respondents file an answer to all surviving claims—Claims 1, 2(B), 2(C), 3(A), 3(C), and 3(D)—of the Second Amended Petition (ECF No. 84) by January 12, 2021. The answer must include substantive arguments on the merits as to each surviving claim, in addition to raising any procedural defenses authorized by this order. In filing the answer, Respondents must comply with the requirements of Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

It is further ordered that Kinford will have 60 days following service of the answer to file and serve a reply brief.

DATED THIS 12th Day of November 2020.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE