UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

STEVEN M. KINFORD,

                          Plaintiff,

    v.

HAROLD WICKHAM[1], *et al.*,

                   Respondents.

Case No. 3:12-cv-00489-MMD-CLB

ORDER

## I.    SUMMARY

Petitioner Steven Kinford filed a second amended petition for writ of *habeas corpus* under 28 U.S.C. § 2254. (ECF No. 84 ("Petition").) This matter is before the Court for adjudication on the merits of the remaining grounds in the Petition. For the reasons discussed below, the Court will deny the Petition and will deny Petitioner a certificate of appealability.

## II.   BACKGROUND[2]

### A.    Conviction and Appeal

Petitioner challenges a conviction and sentence imposed by the Third Judicial District Court for Lyon County. *See State v. Kinford*, Case No. CR6913. Pursuant to a

---

[1]The state corrections department's inmate locator page indicates that Petitioner is incarcerated at the Lovelock Correctional Center ("LCC"). *See https://ofdsearch.doc. nv.gov/form.php* (retrieved July 2022 under identification number 64984). The department's website reflects that Tim Garrett is the warden of that facility. *See https://doc.nv.gov/Facilities/LCC_Facility/* (retrieved July 2022). At the end of this order, the Court directs the Clerk of Court to substitute Petitioner's current immediate physical custodian, Tim Garrett, as Respondent for the prior Respondent Harold Wickham, pursuant to, *inter alia*, Rule 25(d) of the Federal Rules of Civil Procedure.

[2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court. The Court summarizes the factual assertions solely as background to the issues presented in the case, and it does not summarize all such material. No statement of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by the Court. Any absence of mention of a specific piece of evidence or category of evidence does not signify that the Court has overlooked the evidence in considering Petitioner's claim.

guilty plea agreement, Petitioner pleaded guilty to the crime of lewdness with a child under 14-years old. (ECF No. 48-24.) On August 27, 2008, the state court entered a judgment of conviction sentencing Petitioner to a life term with a minimum parole eligibility of 10 years along with lifetime supervision. (ECF No. 48-28.)

### i.   Facts Underlying Conviction

In October 2006, Petitioner's wife contacted law enforcement making numerous complaints against Petitioner, including the accusation that Petitioner molested M.G., their 12-year-old neighbor. (ECF No. 52-11 at 4-5.) Law enforcement interviewed the victim, M.G., regarding the allegations. (ECF No. 52-12.) M.G. confirmed her address and stated that she lived with her father, Eugene Garcia, her stepmother, and siblings. (*Id.* at 5-6.) During the interview, M.G. discussed Garcia's drug use and that Garcia had raped and molested her multiple times while they were living in Idaho and Nevada. (*Id.* at 14-16, 25-33.) Garcia was charged with abuse, neglect or endangerment of a child, and furnishing dangerous drug to a minor. (ECF No. 53-10.)

M.G. also informed law enforcement that Petitioner french-kissed her and took her to the bathroom to touch his penis. (ECF No. 52-12 at 11-13.) Upon questioning from law enforcement, M.G. described an incident where Petitioner put his penis in M.G.'s mouth and another incident where Petitioner had placed his finger in her vagina. (*Id.* at 17-18, 20-23.) M.G. also informed law enforcement that Petitioner would tickle her and go too far up and down her body. (*Id.* at 14.)

### ii.   Petitioner's Trial Attorneys

The state court appointed attorney Paul Yohey to represent Petitioner, who was present at Petitioner's preliminary hearing. (ECF Nos. 48-6, 48-1.) Yohey moved to have Petitioner evaluated at Lake's Crossing. (ECF Nos. 48-1, 48-7.) Petitioner moved to dismiss Yohey as his counsel. (ECF No. 52-24.) During a hearing before the state court, another attorney, Ken Ward, informed the court that he represented Petitioner on another case related to Petitioner's failure to register as a sex-offender charge that was pending based on the outcome of Petitioner's competency determination. (ECF No. 48-12 at 4.)

1
2
Yohey informed the state court that if the case were remanded to justice court, Ward would represent Petitioner. (*Id.* at 5.)

3
4
5
6
7
8
9
The case was remanded to justice court and Ward represented Petitioner. (ECF No. 48-15.) On March 3, 2008, Petitioner signed a guilty plea agreement. (ECF No. 48-24.) On January 11, 2008, the state court appointed Ward to represent Garcia on charges related to M.G. (child abuse and providing dangerous drug to a minor). (ECF Nos. 53-9, 53-12.) Garcia was arrested on March 12, 2008, Ward informed the state court that he had a conflict, Ward was relieved as counsel, and the state court appointed Garcia new counsel. (ECF No. 53-9 at 3.)

10
11
12
13
14
15
16
17
18
19
20
21
22
Petitioner wrote letters to the state court requesting new counsel. (ECF Nos. 52-25, 52-26, 52-27.) At a hearing, Ward informed the state court that Petitioner requested new counsel. (ECF No. 48-25.) At sentencing, on August 25, 2008, Ward addressed Petitioner's request for a new attorney and provided that another attorney, Jesse Kalter, would be willing to review Petitioner's file and give Petitioner his opinion. (ECF No. 48-7 at 4-5.) Kalter had represented Petitioner in unrelated cases, involving Petitioner's charges of failure to register as a sex offender and domestic abuse charges involving Petitioner's wife. (ECF Nos. 52-9, 52-15.) Kalter conferred with Petitioner off the record. (ECF No.48-7 at 6.) Upon return, the state court noted on the record that "Mr. Kalter is familiar with this case because of his involvement in another case, but that he has reviewed the police reports in this matter previously," and that "[Kalter] doesn't feel that he would give any different advice to Mr. Kinford than has been given to him by Mr. Yohey and Mr. Ward." (*Id.* at 7.) The state court proceeded with Petitioner's sentencing.

23
24
25
26
Kalter was appointed as Garcia's counsel in Garcia's case involving M.G. for child abuse and providing dangerous drug to a minor. (ECF Nos. 53-9, 53-25.) On April 28, 2008, Kalter represented Garcia at his arraignment and Garcia entered into a guilty plea agreement. (ECF Nos. 53-26.)

27
///

28
///

3

### B.     First State Post-Conviction Proceedings

On August 6, 2009, Petitioner filed a state petition for writ of habeas corpus seeking post-conviction relief (ECF No. 48-55 ("First State Petition")) and motion for appointment of counsel (ECF No. 48-54). Attorney Robert Fry was appointed as post-conviction counsel. (ECF No. 48-58.) Following an evidentiary hearing and oral argument, the court denied the First State Petition. (ECF Nos. 49-16, 49-23.) Petitioner filed a post-conviction appeal ("First Post-Conviction Appeal") with the help of post-conviction appellate counsel, Erik Johnson. (ECF No. 49-31.) The Nevada Supreme Court affirmed the denial of relief and declined to address a claim of relief because it was not raised before the state court. (ECF Nos. 49-41.)

### C.     Second State Post-Conviction Proceedings

In December 2011, Petitioner filed a second state petition for writ of habeas corpus. (ECF No. 49-51 ("Second State Petition").) The State moved for dismissal, which was granted as procedurally barred. (ECF Nos. 49-58, 50.) Petitioner appealed ("Second Post-Conviction Appeal").[3] The Nevada Supreme Court affirmed in December 2012, finding that the Second State Petition was both untimely and successive under NRS § 34.726(1) and NRS § 34.810(2), and thus procedurally barred as Petitioner failed to demonstrate good cause and actual prejudice. (ECF No. 50-25.)

### D.     Federal Habeas Action

On September 7, 2012, Petitioner mailed, or handed to a prison official for the purpose of mailing, the *pro se* petition for writ of habeas corpus. (ECF No. 10 ("Original Petition")) initiating this federal case and raising two grounds for relief.

Respondents moved to dismiss, arguing the Original Petition was unexhausted and procedurally barred. (ECF No. 20.) This Court denied Respondents' motion,

---

[3]Petitioner filed a *pro se* motion for withdrawal of guilty plea in May 2012, while the Second Post-Conviction Appeal was pending, and amended the motion multiple times. (ECF Nos. 50-15, 50-28, 50-33, 53-1.) The state court denied his request in July 2013. (ECF No. 53-6.) Petitioner did not appeal.

1   construed Petitioner's question as a motion for appointment of counsel, appointed the

2   Federal Public Defender, and granted Petitioner leave to amend. (ECF No. 40.)

3        Petitioner filed a counseled First Amended Petition in September 2014. (ECF

4   No. 47.) Respondents moved to dismiss claims in the First Amended Petition as untimely,

5   unexhausted, procedurally barred, and/or non-cognizable. (ECF No. 56.) Petitioner

6   opposed the dismissal and moved for a stay and abeyance. (ECF Nos. 59, 61.) The Court

7   granted Petitioner's motion, staying this action pending exhaustion of his claims in state

8   court, and denied Respondents' dismissal motion without prejudice. (ECF No. 75.)

9        **E.   Third State Post-Conviction Proceedings**

10        On October 9, 2014, Petitioner filed a third state petition for writ of habeas corpus

11   (ECF No. 85-7 ("Third State Petition")) through federal counsel.[4] The State moved to

12   dismiss, and Petitioner opposed the motion. (ECF Nos. 85-10, 85-11.) The state court

13   held that the Third State Petition was procedurally barred, but Petitioner might be able to

14   show good cause to overcome the procedural bars as to his ineffective-assistance-of-

15   counsel ("IAC") claim alleging trial counsel had undisclosed conflicts of interest that

16   adversely affected their representation ("Conflicts IAC Claim"). (ECF No. 85-16.) The

17   state court therefore ordered an evidentiary hearing on the Conflicts IAC Claim and

18   dismissed the three other grounds. (*Id.*) Following the April 2017 evidentiary hearing, the

19   court denied the Conflicts IAC Claim. (ECF Nos. 85-18, 86-4.)

20        Petitioner appealed the adverse ruling on the Conflicts IAC Claim. (ECF No. 86-7

21   at 4 ("Third Post-Conviction Appeal").) In April 2019, the Nevada Supreme Court affirmed

22   the state court's finding that the Third State Petition was procedurally barred under NRS

23   § 34.726(1) and NRS § 34.810(2) and Petitioner did not show good cause to excuse the

24   procedural bars. (ECF No. 86-10.)

25   ///

26   ///

27

28

---

[4]The Third State Petition alleged virtually identical grounds as the First Amended Petition. (*Compare* ECF Nos. 47 *and* 85-7.)

### F.    Reopened Federal Habeas Action

In May 2019, this Court granted Petitioner's unopposed request to reopen this case and set a schedule to complete briefing. (ECF Nos. 79 - 81.) The Court granted Petitioner leave to further amend his pleading based on the parties' stipulation. (ECF No. 83.) Petitioner filed his Second Amended Petition (ECF No. 84) in August 2019, alleging four grounds for relief under the Fifth, Sixth, and Fourteenth Amendments. Respondents moved to dismiss, and the Court granted Respondents' motion in part dismissing Claims 2(A), 3(B), 3(E), and 4 with prejudice as procedurally defaulted. (ECF No. 105.) The Court deferred consideration of whether Petitioner can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of Claims 1 and 3(A) until the time of merits review. (*Id.*)

## III.   LEGAL STANDARD

### A.    Review under the Antiterrorism and Effective Death Penalty Act

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in *habeas corpus* cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to established United States Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*

*v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of established Supreme Court precedent under § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (internal citation omitted) (quoting *Williams*, 529 U.S. at 409-10).

The Supreme Court has instructed that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted) (describing the standard as "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

### B.    Standard for Evaluation of IAC Claims

In *Strickland*, the United States Supreme Court propounded a two-prong test for analysis of claims of IAC requiring a petitioner to demonstrate: (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). Courts considering a claim of IAC must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. It is the

petitioner's burden to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* at 687.

When the IAC claim is based on a guilty plea challenge, the *Strickland* prejudice prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Under *Hill*, a challenge to the voluntariness of a plea may be based upon a claim of IAC.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104-05. In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland's* deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential."). The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

## IV.   DISCUSSION

### A.   Cause and Prejudice under the *Martinez* Exception

When a petitioner has procedurally defaulted his claims, federal habeas review occurs only in limited circumstances. In *Martinez*, the United States Supreme Court held that the absence or inadequate assistance of counsel in an initial review collateral

proceeding may be relied upon to establish cause excusing the procedural default of a claim of ineffective assistance of trial counsel. 566 U.S. at 9. The Nevada Supreme Court does not recognize *Martinez* as cause to overcome a state procedural bar under Nevada state law. *Brown v. McDaniel*, 130 Nev. 565, 331 P.3d 867, 875 (Nev. 2014). Thus, a Nevada habeas petitioner who relies upon *Martinez*—and only *Martinez*—as a basis for overcoming a state procedural bar on an unexhausted claim can successfully argue that the state courts would hold the claim procedurally barred but that he or she nonetheless has a potentially viable cause and prejudice argument under federal law that would not be recognized by the state courts when applying the state procedural bars. "[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if "the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding." *Martinez*, 566 U.S. at 17.

To establish cause and prejudice to excuse the procedural default of a trial-level IAC claim under *Martinez*, a petitioner must show that: (1) post-conviction counsel performed deficiently; (2) there was a reasonable probability that, absent deficient performance, the result of the post-conviction proceeding would have been different; and (3) the underlying ineffective assistance of trial counsel claim is a substantial one. *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). Determining whether there was a reasonable probability that the result of the post-conviction proceedings would be different "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.*

To show that a claim is "substantial" under *Martinez*, a petitioner must demonstrate that the underlying ineffectiveness claim has "some merit." *Martinez*, 566 U.S. at 14. That is, the petitioner must be able to make at least some showing that trial counsel performed deficiently, and that the deficient performance harmed the defense. *See Strickland*, 466 U.S. at 695-96. When evaluating counsel's choices, the Court must make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at

the time." *Id.* at 689. "[C]ounsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Pinholster*, 563 U.S. at 189.

Here, Petitioner presented Grounds 1 and 3(A) to the state court for the first time in the Third State Petition. (ECF No. 85-7 at 10-21, 26-27.) The claims were then dismissed and affirmed as procedurally barred. (ECF No. 86-10.) Petitioner advances only *Martinez* as a basis for excusing default for Grounds 1 and 3(A).

### i.      Ground 1

#### 1.      Background Information

In Ground 1, Petitioner alleges that his attorneys rendered ineffective assistance because they had undisclosed conflicts of interest that adversely affected their representation. (ECF No. 84 at 19-47.) Petitioner asserts that Yohey had represented Garcia on charges of petty larceny less than two years prior to Yohey's representation of Petitioner and Yohey did not disclose such representation to the state court or to Petitioner.[5] (*Id.* at 26-27.) Ward was appointed to represent Garcia on Garcia's charges of child abuse and providing dangerous drug to a minor and Ward failed to disclose such conflict of interest to the state court in Petitioner's case. (*Id.* at 27-30.) As for Kalter, Kinford asserts that Kalter represented Garcia in Garcia's case related to child abuse and providing dangerous drug to a minor after Ward withdrew from that matter. (*Id.* at 31-32.)

#### 2.      The Parties' Positions

##### a.      Ward

Petitioner argues that Ward had an actual conflict of interest that adversely affected Petitioner. (ECF No. 125 at 39.) Ward represented Petitioner and Garcia simultaneously on charges arising from the same police interview. (*Id.*) Ward appeared as counsel for Petitioner on December 24, 2007. (*Id.* at 41.) Petitioner argues that right

---

[5]Although Petitioner refers to Yohey's representation in the Petition, Petitioner does not present argument that Yohey had an actual conflict of interest that adversely impacted Petitioner. To the extent Petitioner intends to set forth such claim, the Court denies the claim that Yohey rendered ineffective assistance based on an undisclosed conflict of interest as conclusory.

to counsel attached with the filing of a criminal complaint and, therefore, Ward's duty of loyalty and to provide effective assistance attached to his representation of Garcia on January 2, 2008 and Ward did not withdraw as Garcia's counsel until March 26, 2008. (*Id.*) Petitioner argues that Ward's failure to investigate Petitioner's case is *prima facie* evidence of an adverse effect created by Ward's conflict of interest because resolving Petitioner's case benefitted Garcia by ensuring Garcia would not become involved in Petitioner's case as an alternate suspect. (*Id.* at 42-43.) Petitioner further asserts that Ward's conflict of interest adversely affected his ability to withdraw his plea because Ward suggested that Kalter become involved by providing his opinion to Petitioner. (ECF No. 84 at 42.)

Respondents argue that Ward did not have an actual conflict that adversely impacted his performance. (ECF No. 117 at 32.) Ward had no contact with Garcia at any point during his representation of Petitioner. (*Id.*) Garcia appeared for arraignment without counsel and when Ward recognized the conflict, Ward withdrew from representation of Garcia. (*Id.* at 33.) Respondents further argue that Ward did not adversely impact Petitioner's ability to withdraw his plea because Ward acknowledged Petitioner's requests and, as a result, suggested that another attorney should review Petitioner's file. (*Id.* at 31.)

### b.     Kalter

Petitioner argues that Kalter's actual conflict of interest warrants automatic reversal under *Holloway v. Arkansas*, 433 U.S. 475, 489 (1978), because Kalter represented multiple defendants with conflicting interests, a timely objection was made, and the state court failed to appoint separate counsel or take adequate steps to ascertain whether the risk was too remote to warrant separate counsel. (ECF No. 84 at 36.) At the time Kalter advised Petitioner, Kalter had represented Garcia in Garcia's child abuse proceedings related to M.G. (*Id.* at 37.) Kalter also previously represented Petitioner in unrelated cases, involving Petitioner's charges of failure to register as a sex offender and domestic abuse charges involving Petitioner's wife. (ECF Nos. 52-9, 52-15.)

At Petitioner's sentencing hearing when the state court considered whether Kalter should give his opinion to Petitioner, the prosecutor stated that he "believe[s] there may be a conflict of interest with Mr. Kalter representing [Petitioner] going forward with some other items. I don't know if that would affect whether or not he could give an opinion on what the case—the merits of the case. But there may be an issue there." (ECF No. 48-27 at 5.) Petitioner argues that the state court relied on Kalter's opinion of Petitioner's case and did not rule on whether Petitioner should be appointed separate counsel or why Petitioner wanted to withdraw his plea. (ECF No. 125 at 36.) In the alternative, Petitioner argues that Kalter's conflict of interest adversely impacted him. (ECF No. 125 at 38.) He asserts that because Kalter provided his opinion that he would not give "any different advice" to Petitioner, the state court proceeded with sentencing and did not appoint Petitioner new counsel or hear Petitioner's request to withdraw his plea. (*Id.*)

Respondents argue that Petitioner fails to establish that he is entitled to automatic reversal under *Holloway*. (ECF No. 117 at 29.) They argue that Petitioner was not subject to joint representation as the Supreme Court referred to as a single attorney representing multiple co-defendants. (*Id.*) *See Holloway*, 435 U.S. at 482. Moreover, there was no defense objection on the record because the prosecutor merely flagged a potential conflict without objecting on the record. (*Id.*) As such, Respondents insist that the trial court had no obligation to ascertain the risk of representation. (*Id.*)

Respondents further argue that Petitioner fails to establish that there was an actual conflict of interest that adversely affected Kalter's performance. (*Id.* at 29-30.) Kalter was not Petitioner's attorney of record and agreed to talk to Petitioner after he sent a letter to the state court expressing his desire to withdraw his plea. (*Id.*) Kalter represented Garcia in an unrelated matter involving separate charges that were concluded before Kalter's participation in Petitioner's case. (*Id.* at 30-31.) Respondents argue that Kalter did not adversely impact Petitioner's ability to withdraw his plea. (*Id.*)

///

///

### 3. *Martinez* does not apply to Ground 1.

#### a. Petitioner does not demonstrate Ward or Kalter's performances were adversely impacted by an actual conflict of interest.

The Court finds that Ground 1 is not substantial within the meaning of *Martinez*. *See* 566 U.S. at 14. Petitioner does not demonstrate that Ward or Kalter had actual conflicts of interest that adversely affected their performances. Effective assistance of counsel "includes a right to conflict-free counsel." *United States v. Mett*, 65 F.3d 1531, 1534 (9th Cir. 1995). In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate an actual conflict of interest adversely affected his or her lawyer's performance. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

However, until a defendant shows that his or her counsel actively represented conflicting interests, he or she has not established the constitutional predicate for his or her claim of ineffective assistance. *Id.* If counsel actively represents multiple defendants with conflicting interests, such that an actual conflict adversely affects counsel's performance, prejudice is presumed. *See Cuyler*, 446 U.S. at 349-50. However, the United States Supreme Court has instructed that *Cuyler* "does not clearly establish, or indeed even support . . . expansive application" of that rule to cases outside the context of multiple concurrent representation. *Mickens v. Taylor*, 535 U.S. 162, 175 (2002). Potentially divided allegiances do not constitute active representation of conflicting interests. *See Paradis v. Arave*, 130 F.3d 385, 391 (9th Cir. 1997).

Petitioner's counsel did not jointly represent any co-defendants. Petitioner fails to demonstrate that either Ward or Kalter actively represented conflicting interests and that this adversely affected their performances. Ward withdrew from Garcia's case on March 26, 2018, the date of his first appearance on behalf of Garcia and Ward testified that he had no contact with Garcia. (ECF No. 85-18 at 86.) Even if Petitioner could show that Ward actively represented conflicting interests, Petitioner's ineffective assistance claim still could not be successful absent proof that such conflict adversely affected Ward's

13

performance. Petitioner contends that Ward failed to investigate Garcia as an alternate suspect and Ward adversely impacted Petitioner's ability to withdraw his plea. The Court, however, cannot hold based on speculation that Ward's brief representation of Garcia was the cause of any inactions by Ward. *See Morris v. California*, 966 F.2d 448, 455 (9th Cir. 1991).

Although Kalter previously represented Petitioner in unrelated cases, Kalter was not appointed to represent Petitioner in the proceeding underlying Petitioner's ineffective assistance of counsel claim. At the state court hearing on August 8, 2008, Kalter agreed to talk to Petitioner regarding the plea and give Petitioner his opinion. (ECF No. 48-7 at 4-5.) Kalter represented Garcia in a separate case on different charges that had already concluded on April 28, 2008 pursuant to Garcia's guilty plea agreement. (ECF Nos. 53-9, 53-25, 53-26.) There was no representation of parties with interests adverse to each other rising to the level of prejudicial conflict under *Cuyler*, 446 U.S. at 349-50. Moreover, Petitioner has not demonstrated the alleged conflict had an adverse impact on Kalter's performance on Petitioner's behalf. Petitioner can show no more than a theoretical division of loyalties. *See Mickens*, 535 U.S. 162, 171 (2002). It appears, rather, that Kalter spoke to Petitioner and affirmed that he would not have given "any different advice" than that of Ward. (ECF No. 48-7 at 7.) *Id.* ("[O]ur role is not to speculate about counsel's motives or about the plausibility of other litigation strategies.").

### b. Petitioner does not demonstrate automatic reversal is warranted under *Holloway*.

Petitioner does not demonstrate that Kalter's alleged actual conflict of interest warrants automatic reversal under *Holloway v. Arkansas*, 433 U.S. 475, 489 (1978). Where defense counsel timely points out a conflict of interest in joint representation, the trial court is required to investigate further; ignoring counsel's objection mandates automatic reversal of the resulting conviction. *Id.* at 488. Here, Kalter did not jointly represent Petitioner and Garcia as co-defendants. Petitioner was a defendant in a separate criminal matter involving separate allegations from that of Garcia. In addition,

14

1    although the prosecution stated, "there may be an issue" regarding "[Kalter] representing

2    [Peitioner] going forward with some other items," defense counsel did not assert a conflict

3    of interest in the trial court. (ECF No. 48-27 at 5.) Thus, the Court finds that automatic

4    reversal is not warranted under *Holloway*.

5         Accordingly, the Court determines that Ground 1 is without merit. Petitioner's post-

6    conviction counsel was not ineffective for not asserting this claim. Petitioner does not

7    demonstrate cause and prejudice relative to the procedural default. The Court therefore

8    denies Ground 1 as procedurally defaulted.

9         **ii.      Ground 3(A)**

10        In Ground 3(A), Petitioner alleges his attorneys rendered ineffective assistance for

11   failure to investigate the case or advise Petitioner about his possible defense. (ECF No.

12   84 at 55-56.) Petitioner asserts that Yohey and Ward failed to investigate the interview

13   that M.G. had with law enforcement. (ECF No. 125 at 44-50.) Petitioner asserts that his

14   attorneys failed to investigate the experience of the detective conducting the interview,

15   whether the detectives verified the information M.G. provided in her interview, and

16   whether the interview had improper leading questions. (*Id.*) Petitioner asserts that he was

17   prejudiced by his attorneys' failure to investigate because had his attorneys properly

18   investigated and advised him as to his defenses, Petitioner would not have entered his

19   plea, and would have elected to proceed to trial. (*Id.* at 50.)

20        The Court finds that Ground 3(A) is not substantial, and that *Martinez* does not

21   apply to Ground 3(A). Defense counsel has a "duty to make reasonable investigations or

22   to make a reasonable decision that makes particular investigations unnecessary."

23   *Strickland*, 466 U.S. at 691. In an IAC case, "a particular decision not to investigate must

24   be directly assessed for reasonableness in all the circumstances, applying a heavy

25   measure of deference to counsel's judgments." *Id.* In assessing counsel's investigation,

26   the court must conduct an objective review of counsel's performance, measured for

27   "reasonableness under prevailing professional norms." *Id.* at 688. This includes a context-

28   dependent consideration of the challenged conduct as seen "from counsel's perspective

15

1  at the time." *Id.* at 689. *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003). Moreover,

2  "strategic choices made after thorough investigation of law and facts relevant to plausible

3  options are virtually unchallengeable." *Strickland,* 466 U.S. at 690.

4         To obtain relief on this type of claim, "[P]etitioner must convince the court that a

5  decision to reject the plea bargain would have been rational under the circumstances."

6  *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). In exchange for a guilty plea, the State

7  agreed to dismiss all other charges from this criminal episode, and would recommend

8  that Petitioner's sentence run concurrently with the sentence he was currently serving.[6]

9  (ECF No. 48-24 at 2.) If Petitioner rejected the plea and proceeded to trial, he would have

10  faced additional charges, including one count of lewdness with a child under 14 and two

11  counts of sexual assault of a child under 14, and would not have gained the benefit of

12  reduced exposure at sentencing. (ECF No. 21-3.) Petitioner fails to demonstrate a

13  reasonable probability that but for counsel's failure to investigate and advise him as to

14  possible defenses, a rational defendant in Petitioner's situation would have pled not guilty

15  and would have insisted on going to trial.

16         Moreover, Petitioner fails to demonstrate that his attorneys' performance fell below

17  an objective standard of reasonableness. At the plea canvass, Petitioner affirmed that he

18  discussed the case and any possible defenses with his attorney. (ECF No. 21-23 at 9-

19  10.) "Solemn declarations in open court carry a strong presumption of verity." *Blackledge*

20  *v. Allison*, 431 U.S. 63, 73-74 (1977). In the written plea agreement, Petitioner again

21  affirmed that he discussed with his attorney any possible defenses, defense strategies,

22  and circumstances. (ECF No. 48-24 at 4.) Accordingly, Petitioner fails to demonstrate that

23  his attorneys were deficient under *Strickland*. 466 U.S. at 694.

24         Because Petitioner's underlying ineffective assistance of counsel claim fails under

25  *Strickland*, Petitioner cannot meet the second prong of the *Martinez* test, which requires

26  a petitioner to show a reasonable probability that the result of the post-conviction

27

28        [6]On January 30, 2008, the state court entered a judgment of conviction against Petitioner for the crime of sex offender failure to register and sentenced Petitioner to a term of imprisonment of 16 to 48 months. (ECF No. 48-17.)

proceedings would have been different absent post-conviction counsel's deficient performance. *See Ramirez*, 937 F.3d at 1242. Because Petitioner failed to satisfy all three prongs of the *Martinez* test, Petitioner does not show cause and prejudice to excuse default of this claim. The Court therefore dismisses Ground 3(A).

### B.     Ground 2(B)

#### i.     Background Information

In Ground 2(B), Petitioner alleges that his guilty plea was not entered knowingly, intelligently, and voluntarily in violation of his Fifth and Fourteenth Amendment rights because the state district court judge coerced Petitioner to enter his plea. (ECF No. 84 at 47-52.) At the state court arraignment hearing, Ward informed the state court that there was a plea negotiation, "however, [Petitioner] does not want to accept that. And he does not want to have the case remanded back to preliminary hearing and he does not want to have this matter set for trial." (ECF No. 48-23 at 4.) The state court addressed Petitioner as follows:

> *The State Court:* Apparently, the plea negotiation was for you to plead to the one count of lewdness, which is contained in the Information. If you don't wish to plead to that, what I will do is - - Well, since the other charges are not - - there is [sic] never been a preliminary hearing, what I would do would be remand the matter for a preliminary hearing and the State could proceed on all of the charges that were filed in the justice court. Do you understand that?
>
> *Kinford:* Yes, sir.
>
> *The State Court:* And the charge that's presently in the Information carries a penalty of life with a possibility of parole after ten years. The other charges, the two counts of sexual assault would carry penalties of life with the possibility of parole after 20 years, if you're convicted ultimately of all three offenses, the sentences could be either concurrent or consecutive. So, if you're convicted of all three offenses you'd be looking at 50 years, minimum, before you're eligible for parole.
>
> *Kinford:* Yes, sir.
>
> *The State Court:* Now what you're looking at right now is the - - if you plead to the lewdness you're looking at possibility of parole after ten years. The decision is purely yours as to what you're going to do, but if you don't do anything, I'm going to remand the matter to justice court, allow the State to file - - well, file an amended complaint in the justice court and proceed with the preliminary hearing. So tell me what you want to do? If you wish, [Ward], I could trail the matter while - - while [Petitioner] has an opportunity to think about his options.

1    (ECF No. 48-23 at 5-6.)

2        Petitioner informed the state court that he would like to speak to his attorney and

3    the state court trailed the matter. (*Id.* at 8.) After speaking to his attorney, Petitioner

4    accepted the negotiated plea. (*Id.* at 9.) Petitioner argues that the state court's comments

5    were improper and inherently coercive. (ECF No. 84 at 51.) He asserts that he would not

6    have accepted the plea offer but for the state court's comments. (*Id.* at 52.)

7                    **ii.    State Appellate Court Determination**

8        In affirming the denial of Petitioner's state habeas petition, the Nevada Supreme

9    Court held:

10       [Petitioner] claims that his plea was involuntarily entered because of
         impermissible judicial involvement in the plea negotiations. At his third
11       arraignment, [Petitioner's] counsel represented that the parties had
         negotiated a plea arrangement, but [Petitioner] began to equivocate. The
12       district court explained the sentence [Petitioner] would receive under the
         plea deal and the sentence he could possibly face if convicted on all the
13       counts charged and sentenced consecutively. The district court also stated
         that if Petitioner did not reach an agreement it would remand the case for a
14       preliminary hearing and that he was required to decide whether or not to
         plead before the end of the day. The district court then continued the matter
15       to afford [Petitioner] an opportunity to consult with his counsel. After
         reconvening, the district court received [Petitioner's] guilty plea and
16       thoroughly canvassed him.

17       [Petitioner] claims that the district court's comments violated the "bright-line
         rule" forbidding most judicial involvement in plea negotiations adopted by
18       this court in *Cripps v. State*, 122 Nev. 764, 137 P.3d 1187 (2006). We agree
         that the district court's comments crossed this line. *See U.S. v. Johnson*, 89
19       F.3d 778, 783 (11th Cir. 1996) (noting that federal courts have consistently
         held that district courts are precluded from discussing "the penal
20       consequences of a guilty plea as compared to going to trial" because such
         discussions are "inherently coercive, no matter how well-intentioned").
21       However, we conclude the error was harmless. *See Cripps*, 122 Nev. 771,
         137 P.3d at 1192 (approving the federal bright-line approach against judicial
22       involvement in plea negotiations while concluding that such involvement
         "may constitute harmless error").
23
         The harmless-error review "is whether the district court's [erroneous
24       participation] may reasonably be viewed as having been a material factor
         affecting the defendant's decision to plead guilty.'" *Id.* (quoting *U.S. v.*
25       *Daigle*, 63 F.3d 346, 349 (5th Cir. 1995)). Aside from the transcript of the
         arraignment, [Petitioner] offered no evidence at his evidentiary hearing that
26       the district court's comments caused him to plead guilty, but stated only that
         such result must be inferred from the record. The plea agreement was
27       apparently settled in principle before the arraignment, but [Petitioner] began
         to vacillate when the moment to enter the plea arrived. After the district court
28       contrasted the penal consequences of going ahead with trial – implying that,
         if convicted, the district court may impose consecutive sentences – with

                                        18

what was offered in the plea agreement, the court continued the matter to allow Petitioner time to discuss the situation with his counsel. Petitioner was then thoroughly and patiently canvassed, stating that he understood the rights he was surrendering, the sentence he would be serving, and that he had not been coerced into taking the plea. At the evidentiary hearing, the district court found that its intervention was intended only to "explain to the defendant the alternatives to the plea bargain" and that its intervention was not intimidating or coercive, particularly where Petitioner was allowed time to consult with his attorney. Under these circumstances and presented with no evidence other than the face of the record, we are compelled to agree. We therefore conclude that although the district court erred in discussing penal consequences in order to facilitate a yet-unfinalized plea agreement, the error was harmless where Petitioner has failed to prove that the intervention was a material factor in his decision to plead guilty.

(ECF No. 25-6 at 2-4.)

### iii.   Conclusion

Petitioner cannot obtain habeas relief because the state appellate court's ruling does not present a constitutional issue under 28 U.S.C. § 2254. The Nevada Supreme Court relied on *United States v. Johnson*, 89 F.3d 778, 783 (11th Cir. 1996), and *United States v. Daigle*, 63 F.3d 346, 349 (5th Cir. 1995), which applied Rule 11 of the Federal Rules of Criminal Procedure. While Rule 11 and its state analogs require additional safeguards, violations of such rules do not ordinarily render a plea constitutionally infirm and thus vulnerable to collateral attack. *See Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012) (citing *Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991)); *see also United States v. Davila*, 569 U.S. 597, 610 (2013) (holding that Rule 11 was adopted as a prophylactic measure, "not one impelled by the Due Process Clause or any other constitutional requirement").

Nonetheless, the Nevada Supreme Court's ruling was neither contrary to, nor an objectively unreasonable application of clearly established law as determined by the United States Supreme Court. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding [the issue in dispute,] it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'") "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary

///

19

1    and intelligent choice among the alternative courses of action open to the defendant.'"

2    *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).

3        A guilty plea obtained through coercion is involuntary. *See Brady v. United States*,

4    397 U.S. 742, 750 (1970). "[T]he agents of the State may not produce a plea by actual or

5    threatened physical harm or by mental coercion overbearing the will of the [petitioner]"

6    and a guilty plea is void if it was "induced by promises or threats which deprive it of the

7    character of a voluntary act." *Id.*; *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986); *United*

8    *States v. Kaczynski*, 292 F.3d 1108, 1114 (9th Cir. 2001), *cert. denied*, 535 U.S. 933

9    (2002) (citing *Machibroda v. United States*, 368 U.S. 487, 493 (1962). The relevant inquiry

10   is whether a petitioner's guilty plea was voluntary and intelligent under the totality of the

11   circumstances. *See Alford*, 400 U.S. at 31; *Brady*, 397 U.S. at 749. Moreover, "[a] habeas

12   petitioner bears the burden of establishing that his [or her] guilty plea was not voluntary

13   and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006).

14       As the Nevada Supreme Court stated, the state district court's intervention was not

15   intimidating or coercive and Petitioner was afforded time to consult with his attorney. (ECF

16   No. 25-6 at 4.) Here, the record does not contain evidence of coercion. The state district

17   court conducted a plea colloquy and Petitioner confirmed that he met with his attorney on

18   multiple occasions, and that his attorney explained the plea and his possible defenses.

19   (ECF No. 21-23 at 9-10.) Petitioner also confirmed that he was entering his plea

20   voluntarily and that no one threatened him to induce him to plead guilty. (*Id.* at 12.) Courts

21   generally consider such responses to be strong indicators of the voluntariness of the

22   petitioner's guilty plea. *See Sanchez v. United States*, 50 F.3d 1448, 1455 (9th Cir. 1995).

23   The state district court's comments do not render Petitioner's plea involuntary.

24   Accordingly, Petitioner is not entitled to habeas relief on Ground 2(B).

25       **C.    Ground 2(C)**

26       In Ground 2(C), Petitioner alleges that his guilty plea was not entered knowingly,

27   intelligently, and voluntarily in violation of his Fifth and Fourteenth Amendment rights

28   because he suffered a traumatic brain injury that prevented him from understanding the

1   plea. (ECF No. 84 at 52-54.) He asserts that medical records and competency evaluations

2   show significant cognitive and memory issues. (*Id.* at 53.) An evaluation indicates that

3   Petitioner "would benefit from having material presented slowly, repeated often, and

4   questioning him often to assess his understanding." (*Id.*) Moreover, Petitioner was taking

5   five different medications at the time of the plea colloquy. (*Id.* at 54.)

6          AEDPA's deferential standard of review applies when the state court actually

7   decides the claim under review on the merits. Where the state court rejects a claim on

8   the basis of procedural default without reaching the merits, the AEDPA standard of review

9   does not apply if the federal court reaches the merits; and the claim instead is subject to

10   *de novo* review on federal habeas review. *See Chaker v. Crogan*, 428 F.3d 1215, 1220-

11   21 (9th Cir. 2005), *cert. denied,* ---U.S. ---*,* 126 S.Ct. 2023; *see also Lewis v. Mayle*, 391

12   F.3d 989, 996 (9th Cir. 2004); *Nulph v. Cook*, 333 F.3d 1052, 1057 (9th Cir. 2003); *Pirtle*

13   *v. Morgan*, 313 F.3d 1160, 1167-68 (9th Cir. 2002). As the Nevada Supreme Court did

14   not reach the merits of the claim asserted in Ground 2(C), the Court reviews the claim

15   under a *de novo* standard rather than the deferential standard of review that would

16   otherwise apply under AEDPA.

17          As stated previously, "[t]he longstanding test for determining the validity of a guilty

18   plea is 'whether the plea represents a voluntary and intelligent choice among the

19   alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *Alford*,

20   400 U.S. at 31). Among other circumstances, a plea can be voluntary only if it is "entered

21   by one fully aware of the direct consequences" of his plea. *Brady*, 39 U.S. at 749. As long

22   as a defendant "has sufficient present ability to consult with his [or her] lawyer with a

23   reasonable degree of rational understanding and . . . has a rational as well as factual

24   understanding of the proceedings against him," he or she is competent to plead guilty.

25   *Dusky v. United States*, 362 U.S. 402 (1960).

26          Here, the record supports the finding that Petitioner's plea was knowing and

27   voluntary. Upon request from Yohey, Petitioner was assessed for competency. A licensed

28   psychologist, Dr. Bissett, initially concluded that Petitioner did not demonstrate sufficient

1    mentality to comprehend his charges and legal process and did not demonstrate sufficient

2    mentality to assist counsel with his defense, but also acknowledged that Petitioner was

3    likely embellishing his symptoms of memory and other cognitive deficits.[7] (ECF No. 52-

4    19 at 7.) On his final evaluation, Dr. Bissett concluded that Petitioner possessed sufficient

5    mentality to comprehend his criminal charges, to demonstrate a rational understanding

6    of legal process, and the ability to assist his counsel. (ECF No. 52-22.) Dr. Bissett also

7    commented that "[b]ecause of possible impairments in attention and memory, [Petitioner]

8    would benefit from having material presented slowly, repeated often, and questioning him

9    often to assess his understanding. (*Id.* at 11.)

10           During the plea canvass, Petitioner confirmed that his attorney explained the

11   charges and discussed possible defenses, that Petition understood sentencing, and that

12   Petitioner also understood he was giving up certain rights by pleading guilty. (ECF No.

13   21-23 at 11-13.) The state court provided Petitioner the opportunity to ask questions. (*Id.*)

14   Ward provided the state court with Petitioner's medications and stated that Ward "asked

15   repeatedly if these have any effect on his ability to either understand what's going on in

16   this, or any effect on his reasoning ability. [Petitioner] advised me that they do not." (*Id.*

17   at 16.) Upon questioning from the state court, Petitioner agreed with his counsel's

18   representation regarding his medications. (*Id.*) In addition to the plea canvass, Ward

19   represented to the state court that he reviewed the guilty plea agreement line by line with

20   Petitioner and that Petitioner was "answering questions and asking intelligent questions."

21   (ECF No. 21-23 at 18.) Petitioner fails to demonstrate that his medical issues rendered

22   him unable to understand the proceedings or the consequences of his guilty plea. *See*

23   *Godinez v. Moran*, 509 U.S. 389, 396-97 (1993). Accordingly, Petitioner is not entitled to

24   habeas relief on Ground 2(C).

25   ///

26   ///

27   ────────────────

28           [7]Upon evaluation, Dr. Davis concluded that Petitioner demonstrated sufficient
     mentality to comprehend his charges and legal process and sufficient mentality to assist
     counsel in his defense. (ECF No. 52-18.)

1        **D.**     **Ground 3(C)**

2            **i.**     **Background Information**

3        In Ground 3(C), Petitioner alleges that his trial counsel rendered ineffective

4 assistance for failure to object to or remedy the state court's coercion when Petitioner

5 entered his plea. (ECF No. 84 at 54-56.) Petitioner asserts that trial counsel had no

6 strategic reason to choose not to object to the state court's participation in the plea

7 negotiations. (ECF No. 125 at 61.) He further asserts that he was prejudiced, that he was

8 subject to the state court's coercion, and rushed into a plea he did not understand. (*Id.*)

9            **ii.**     **State Appellate Court Determination**

10        The Nevada Supreme Court held:

11           [Petitioner] makes a related claim that his counsel was ineffective for not
intervening to stop a coerced plea. [Petitioner] was granted an evidentiary

12           hearing on this issue and provided no evidence to support this contention.
The record shows that counsel conferred with [Petitioner] and secured a

13           plea agreement in which two counts of sexual assault of a child were
dismissed, a deal that was arguably quite favorable. We conclude that

14           [Petitioner] has failed to meet his burden of proving that counsel's
performance was deficient or that, but for counsel's allegedly deficient

15           performance, he would not have pleaded guilty and would have insisted on
proceeding with the trial. *See Kirksey v. State*, 112 Nev. 980, 988, 923 P.2d

16           1102, 1107 (1996); *Hill v Lockhart*, 474 U.S. 52, 58-59 (1985).

17 (ECF No. 25-6 at 4-5.)

18            **iii.**     **Conclusion**

19        The Nevada Supreme Court's ruling was neither contrary to nor an objectively

20 unreasonable application of clearly established law as determined by the United States

21 Supreme Court. Petitioner has not established that counsel's performance fell "outside

22 the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As

23 the Nevada Supreme Court determined, Petitioner's counsel conferred with him and

24 secured a favorable plea deal that dismissed two additional charges against Petitioner

25 and provided the benefit of reduced exposure at sentencing. As the state record makes

26 clear, Petitioner confirmed his attorney explained the plea agreement and possible

27 defenses to him and that he understood sentencing. (ECF No. 21-23 at 9-10.)

28 ///

Moreover, the Nevada appellate court reasonably determined that Petitioner failed to demonstrate prejudice. Petitioner fails to establish how counsel's objection to the state court's comments would have induced him to plead not guilty and proceed with trial. The Nevada Supreme court reasonably found Petitioner failed to demonstrate a reasonable probability that counsel's failure to object to the state district court's comments would cause a rational defendant in Petitioner's situation to plead not guilty and proceed to trial. *See Hill*, 474 U.S. at 59-60. Petitioner is therefore denied federal habeas relief as to Ground 3(C).

### E.    Ground 3(D)

In Ground 3(D), Petitioner alleges counsel rendered ineffective assistance for failure to confirm that Petitioner entered a voluntary plea in light of his health issues. (ECF No. 84 at 57-58.) Petitioner asserts that Ward did not ensure that the state court was familiar with the scope of Petitioner's medical issues or that Petitioner's needs were met. (ECF No. 125 at 62.) Petitioner further asserts that Ward failed to ensure Petitioner understood the state court's questions and that Petitioner entered a knowing, intelligent, voluntary plea. (*Id.* at 63.)

Similar to Ground 2(C), as the Nevada Supreme Court did not reach the merits of the claim asserted in Ground 3(D), the Court reviews the claim under a *de novo* standard rather than the deferential standard of review that would otherwise apply under AEDPA. On *de novo* review, the Court denies relief as to Ground 3(D). Petitioner fails to demonstrate his counsel's "representation fell below an objective standard of reasonableness;" and "a reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial." *See Strickland*, 466 U.S. at 687-88; *Hill*, 474 U.S. at 59.

Petitioner's assertion that Ward failed to ensure that the state court was aware of Petitioner's medical issues or that Petitioner understood the proceedings is belied by the record. During the plea canvass, Ward provided the state court with Petitioner's list of medications. (ECF No. 21-23 at 15-16.) Ward further represented to the state court that

he "asked repeatedly if these have any effect on [Petitioner's] ability to either understand what's going on in this, or any effect on his reasoning ability. [Petitioner] advised me that they do not." (*Id.* at 16.) Ward reviewed the guilty plea agreement line by line with Petitioner. (*Id.* at 18.) Upon questioning from the state court, Petitioner agreed with his counsel's representations. (*Id.*) In addition, the state court noted that Petitioner was evaluated and determined to be competent. (*Id.*) Accordingly, Petitioner fails to demonstrate that counsel's performance fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

Moreover, Petitioner fails to demonstrate prejudice, given the benefits he received in return for his plea. Petitioner does not present convincing evidence indicating that there was a reasonable probability that, but for counsel's errors, Petitioner would not have pled guilty and would have insisted on going to trial. The record shows that counsel negotiated a favorable plea agreement, counseled Petitioner through the process, and presented relevant information regarding Petitioner's medical issues to the state court. Accordingly, Petitioner is denied federal habeas relief as to Ground 3(D).

## V.    CERTIFICATE OF APPEALABILITY

This is a final order adverse to Petitioner. Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a certificate of appealability ("COA"). Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.*

Applying these standards, this Court finds that a certificate of appealability is unwarranted.

**VI.    CONCLUSION**

It is therefore ordered that Petitioner Steven Kinford's second amended petition for writ of *habeas corpus* under 28 U.S.C. § 2254 (ECF No. 84) is denied.

It is further ordered that a certificate of appealability is denied.

The Clerk of Court is directed to substitute Tim Garrett for Respondent Harold Wickham, enter judgment accordingly, and close this case.

DATED THIS 1st Day of August 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE